KAREN P. HEWITT
United States Attorney
STEVE MILLER
Assistant U.S. Attorney
California State Bar No. 138020
United States Courthouse
940 Front Street, Room 5152
San Diego, California  92189-0150
Telephone: (619) 557-5432
email: steve.miller2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07cr3355-LAB |
| | ) | |
| Plaintiff, | ) | DATE: January 22, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| LORI STAUFFER (1), and | ) | OPPOSITION TO DEFENDANTS' |
| MARK NEEL (2), | ) | MOTIONS TO: |
| | ) | |
| Defendant. | ) | (1)  COMPEL DISCOVERY |
| | ) | (2)  DISMISS INDICTMENT DUE TO |
| | ) | MISINSTRUCTIONS OF THE |
| | ) | GRAND JURY |
| | ) | (3)  LEAVE TO FILE FURTHER MOTIONS |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS |
| | ) | AND MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES AND GOVERNMENT'S |
| | ) | MOTION FOR RECIPROCAL DISCOVERY |
| | ) | |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steve Miller, Assistant United States Attorney, and hereby files its response and opposition to defendants' above-referenced motions. Said response is based upon the files and records of this case, together with the attached statement of facts, memorandum of points and authorities.

I

## STATEMENT OF FACTS

On November 12, 2007, at approximately 11:01 p.m., defendant LORI STAUFFER drove and MARK NEEL rode as a passenger in a black Mercedes Benz 190E to the San Ysidro Port of Entry.  At the primary inspection area, defendant STAUFFER presented a California Driver's License in a false name.  The inspector inspected the car and was unable to open the trunk.  When he looked inside the rear of the car, he found a person concealed behind the rear seat area.  The car was referred to secondary inspection.

In the secondary inspection area, inspectors removed the rear seat cushion and discovered a red metal container that was an alternate fuel source.  The inspector removed an Hispanic male who was concealed in the gas tank compartment.

Defendant STAUFFER was advised of her <u>Miranda</u> rights and agreed to make a statement.  She told the agents that she was approached by a Hispanic man and woman in Tijuana and offered the opportunity to make money driving a car across the border.  Defendant STAUFFER stated that she knew the car contained an alien and that she was unsure of how much money she was to collect for crossing the alien.  She said that she was to follow a brown van across the border and did not know where she was going to deliver the alien.  Defendant STAUFFER stated that Defendant NEEL was present when she agreed to smuggle the alien. Defendant STAUFFER said that she had known Defendant NEEL for seven weeks.

Defendant NEEL was advised of his <u>Miranda</u> rights and agreed to make a statement.  He told the agents that he also was approached by an Hispanic man and woman in Tijuana and offered the opportunity to

07cr3355-LAB

1   make money driving a car across the border.  Defendant NEEL knew the

2   car contained an alien and that he was to deliver the alien to

3   somewhere in San Diego.  He did not know how much money he was to be

4   paid for crossing the alien.  Defendant NEEL identified Defendant

5   STAUFFER as his common-law wife of two months.

6                                    II

7                          POINTS AND AUTHORITIES

8        A.   THE GOVERNMENT HAS AND WILL CONTINUE TO COMPLY
             WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL
9            PROCEDURE

10       The Government has provided 122 pages of voluntary discovery as

11  well as a video disk of the statement to the agents.  The Government

12  will continue to provide voluntary discovery when it becomes available

13  and will comply with Rule 16 and its obligations under <u>Brady v.</u>

14  <u>Maryland</u>, 373 U.S. 83 (1963), and 18 U.S.C. § 3500.

15       The Government gives specific notice of its intent to offer

16  evidence of other acts under Rule 404(b).  By this notice, the

17  Government reserves the right to offer any evidence, of any act, that

18  was performed by the defendants, that is referenced in any of the

19  discovery.  The acts also include, but are not limited to events that

20  only become relevant once defendants' theory of the case is revealed.

21

22       B.   THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND
             THE INDICTMENT SHOULD NOT BE DISMISSED

23            1.   <u>Introduction</u>

24       Defendant makes contentions relating to two separate instructions

25  given to the grand jury during its impanelment by District Judge

26  Larry A. Burns on January 10, 2007.  Although recognizing that the

27  Ninth Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th

28  Cir. 2005) (en banc) generally found the two grand jury instructions

constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). [<u>Id.</u>]    <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice–that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"–a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. Concerning that kind of a contention <u>Isgro</u> stated:

//

4

07cr3355-LAB

[A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[1/]

The portions of the two relevant instructions approved in Navarro-Vargas were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form

---

[1/]    In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

5

of 'jury nullification.'"[2/]    408 F.3d at 1203 (footnote omitted).
"Furthermore, the grand jury has few tools for informing itself of the
policy or legal justification for the law;  it receives no briefs or
arguments from the parties.    The grand jury has little but its own
visceral reaction on which to judge the 'wisdom of the law.'"    Id.

Concerning the "United States Attorney and his Assistant United
States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that
> although this passage may include unnecessary language, it
> does not violate the Constitution.   The "candor, honesty,
> and good faith" language, when read in the context of the
> instructions as a whole, does not violate the
> constitutional relationship between the prosecutor and
> grand jury. . . .  The instructions balance the praise for
> the government's attorney by informing the grand jurors
> that some have criticized the grand jury as a "mere rubber
> stamp" to the prosecution and reminding them that the grand
> jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.    Id.    "The phrase is not vouching for the
prosecutor, but is closer to advising the grand jury of the
presumption of regularity and good faith that the branches of
government ordinarily afford each other."    Id.

2.    <u>The Expanded "Wisdom of the Criminal Laws"
Instruction Was Proper</u>

Concerning whether the new grand jurors should concern themselves
with the wisdom of the criminal laws enacted by Congress, Judge Burns'
full instruction stated:

//

//

_____

[2/]    The Court acknowledged that as a matter of fact jury
nullification does take place, and there is no way to control it.  "We
recognize and do not discount that some grand jurors might <u>in fact</u>
vote to return a no bill because they regard the law as unwise at best
or even unconstitutional.   For all the reasons we have discussed,
there is <u>no post hoc</u> remedy for that;  the grand jury's motives are
not open to examination."  408 F.3d at 1204 (emphasis in original).

1    You understood from the questions and answers that a couple
2    of people were excused, I think three in this case, because
     they could not adhere to the principle that I'm about to
3    tell you.

4         But it's not for you to judge the wisdom of the
     criminal laws enacted by congress; that is, whether or not
     there should be a federal law or should not be a federal
5    law designating certain activity is criminal is not up to
     you.  That's a judgment that congress makes.
6
          And if you disagree with the judgment made by
7    congress, then your option is not to say "Well I'm going to
     vote against indicting even though I think that the
8    evidence is sufficient" or "I'm going to vote in favor of
     even though the evidence may be insufficient."  Instead,
9    your obligation is to contact your congressman or advocate
     for a change in the laws, but not to bring your personal
10   definition of what the law ought to be and try to impose
     that through applying it in a grand jury setting.
11

12   Partial Transcript pp. 8-9.

13        Defendant acknowledges that in line with <u>Navarro-Vargas</u>, "Judge

14   Burns instructed the grand jurors that they were forbidden 'from

15   judg[ing] the wisdom of the criminal laws enacted by Congress; that

16   is, whether or not there should be a federal law or should not be a

17   federal law designating certain activity [as] criminal is not up to

18   you.'"  Defendant notes, however, that  "[t]he instructions go beyond

19   that, however, and tell the grand jurors that, should 'you disagree

20   with that judgment made by Congress, then your option is not to say

21   'well, I'm going to vote against indicting even though I think that

22   the evidence is sufficient' or 'I'm going to vote in favor of even

23   though the evidence may be insufficient.'"  Defendant contends that

24   this addition to the approved instruction, "flatly bars the grand jury

25   from declining to indict because the grand jurors disagree with a

26   proposed prosecution."  Defendant further contends that the flat

27   prohibition was preemptively reinforced by Judge Burns when he

28   "referred to an instance in the grand juror selection process in which

7

he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." This argument mixes-up two of the holdings in <u>Navarro-Vargas</u> in the hope they will blend into one. They do not.

<u>Navarro-Vargas</u> does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e.

disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was germane.[3]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand jury not to indict.[4]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is

---

[3]    That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.    To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[4]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.    The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.    As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

07cr3355-LAB

1    associated with the commission of that crime, committed it
     or helped commit it.
2
         If the answer is yes, then as grand jurors your
3    function is to find that the probable cause is there, that
     the case has been substantiated, and it should move
4    forward. If conscientiously, after listening to the
     evidence, you say "No, I can't form a reasonable belief has
5    anything to do with it, then your obligation, of course,
     would be to decline to indict, to turn the case away and
6    not have it go forward.

7    Partial Transcript pp. 3-4.

8        Probable cause means that you have an honestly held
     conscientious belief and that the belief is reasonable that
9    a federal crime was committed and that the person to be
     indicted was somehow associated with the commission of that
10   crime. Either they committed it themselves or they helped
     someone commit it or they were part of a conspiracy, an
11   illegal agreement, to commit that crime.

12       To put it another way, you should vote to indict when
     the evidence presented to you is sufficiently strong to
13   warrant a reasonable person to believe that the accused is
     probably guilty of the offense which is proposed.

14

15   Partial Transcript p. 23.

16       While the new grand jurors were told by Judge Burns that they

17   could not question the wisdom of the criminal laws per Navarro-Vargas,

18   they were also told by Judge Burns they had the discretion not to

19   return an indictment per Navarro-Vargas. Further, if a potential

20   grand juror could not be dissuaded from questioning the wisdom of the

21   criminal laws, that grand juror should be dismissed as a potential

22   jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076,

23   1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal

24   of this Indictment or any other indictment by this Court exercising

25   its supervisory powers.

26       Finally, even if there was an error, Defendant has not

27   demonstrated he was actually prejudiced thereby, a burden he has to

28   bear. "Absent such prejudice--that is, absent 'grave' doubt that the

decision to indict was free from the substantial influence of [the

misconduct]'--a dismissal is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

                    3.    The Addition to the "United States Attorney
                          and his Assistant United States Attorneys"
                          <u>Instruction Did Not Violate the Constitution</u>

        Concerning the new grand jurors' relationship to the United

States Attorney and the Assistant U.S. Attorneys, Judge Burns

variously stated:

        [T]here's a close association between the grand jury and
        the U.S. Attorney's Office.

        . . . . You'll work closely with the U.S. Attorney's
        Office in your investigation of cases.

Partial Transcript p. 11.

        [I]n my experience here in the over 20 years in this court,
        that kind of tension does not exist on a regular basis,
        that I can recall, between the U.S. Attorney and the grand
        juries.  They generally work together.

Partial Transcript p. 12.

        Now, again, this emphasizes the difference between the
        function of the grand jury and the trial jury.  You're all
        about probable cause.  If you think that there's evidence
        out there that might cause you to say "well, I don't think
        probable cause exists," then it's incumbent upon you to
        hear that evidence as well.  As I told you, in most
        instances, the U.S. Attorneys are duty-bound to present
        evidence that cuts against what they may be asking you to
        do if they're aware of that evidence.

Partial Transcript p. 20.[5/]

        As a practical matter, you will work closely with
        government lawyers.  The U.S. Attorney and the Assistant
        U.S. Attorneys will provide you with important services and
        help you find your way when you're confronted with complex

_____

        [5/]    Just prior to this instruction, Judge Burns had informed the
grand jurors that:

        [T]hese proceedings tend to be one-sided necessarily. . .
        Because it's not a full-blown trial, you're likely in most
        cases not to hear the other side of the story, if there is
        another side to the story.

Partial transcript p. 19.

                                                        07cr3355-LAB

1       legal matters.   It's entirely proper that you should
        receive the assistance from the government lawyers.
2

3       But at the end of the day, the decision about whether
        a case goes forward and an indictment should be returned is
        yours and yours alone.   If past experience is any
4       indication of what to expect in the future, then you can
        expect that the U.S. Attorneys that will appear in front of
5       you will be candid, they'll be honest, that they'll act in
        good faith in all matters presented to you.
6

7 Partial Transcript pp. 26-27.

8      Commenting on the phrase, "the U.S. Attorneys are duty-bound to

9 present evidence that cuts against what they may be asking you to do

10 if they're aware of that evidence," Defendant proposes that by making

11 that statement, "Judge Burns also assured the grand jurors that

12 prosecutors would present to them evidence that tended to undercut

13 probable cause."   Defendant then ties this statement to the later

14 instruction which "advis[ed] the grand jurors that they 'can expect

15 that the U.S. Attorneys that will appear in front of [them] will be

16 candid, they'll be honest, and . . . they'll act in good faith in all

17 matters presented to you.'"  From this lash-up Defendant contends:

18       These <u>instructions create a presumption</u> that, in cases
        where the prosecutor does not present exculpatory evidence,
19       no exculpatory evidence exists. A grand juror's reasoning,
        in a case in which no exculpatory evidence was presented,
20       would proceed along these lines:

21       (1) I have to consider evidence that undercuts probable
    cause.
22

23       (2) The candid, honest, duty-bound prosecutor
        would, in good faith, have presented any such
        evidence to me, if it existed.
24

25       (3) Because no such evidence was presented to me,
        I may conclude that there is none. Even if some
        exculpatory evidence were presented, a grand
26       juror would necessarily <u>presume</u> that the evidence
        presented represents the universe of all
27       available exculpatory evidence; if there was
        more, the duty-bound prosecutor would have
28       presented it.

The instructions therefore discourage investigation-- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p.26.]  (Emphasis added.)[6/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[7/]  (emphasis

_____

[6/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate.  See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three.  963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)).  See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[7/]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."  504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers

(continued...)

13                                      07cr3355-LAB

added)).  See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[8/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[9/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

---

[7/](...continued)
would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

[8/]    He recalled those days when instructing the new grand jurors.  [Partial Transcript pp. 12, 14-16, 17-18.]

[9/]    The    USAM    is    available    on-line    at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

(Emphasis added.)[10]   This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation</u>' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[11]

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[12]   If it does

_____

[10]    <u>See</u>    www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.htm.  Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessibility of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[11]    <u>See</u>  <u>www.usdoj.gov/usao/eousa/foia_reading_room/usam/</u>title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

    Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  <u>See</u> <u>www.usdog.gov/usao/eousa/foia_reading</u>_room/usam/<u>title9/</u>5mcrm.htm.

[12]    Recall Judge Burns also told the grand jurors that:

(continued...)

07cr3355-LAB

exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[13/]  There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when

---

[12/](...continued)
[T]hese proceedings tend to be one-sided necessarily . . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[13/]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

07cr3355-LAB

charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing <u>Williams</u> established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("<u>Williams</u> clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[14/]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by <u>Navarro-Vargas</u>.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent,"  which was also

---

[14/]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per <u>Williams</u>, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

1   required by <u>Navarro-Vargas</u>.   408 F.3d at 1207.   In this context the

2   unnecessary "duty-bound" statement does not mean the instructions were

3   constitutionally defective requiring dismissal of this indictment or

4   any indictment.

5       The "duty bound" statement constitutional contentions raised by

6   Defendant do not indicate that the "'structural protections of the

7   grand jury have been so compromised as to render the proceedings

8   fundamentally unfair, allowing the presumption of prejudice' to the

9   defendant," and "[the] defendant can[not] show a history of

10  prosecutorial misconduct that is so systematic and pervasive that it

11  affects the fundamental fairness of the proceeding or if the

12  independence of the grand jury is substantially infringed." <u>Isgro</u>,

13  974 F.2d at 1094 (citation omitted).   Therefore, this Indictment, or

14  any other indictment, need not be dismissed.

15      C.   ANY LEAVE FOR DEFENDANT TO FILE FURTHER
             <u>MOTIONS SHOULD BE STRICTLY LIMITED</u>
16

17      While the government recognizes this court's discretion to permit

18  defendant to file further motions, the Government does oppose

19  defendant's motion to the extent it is conjectural, overly broad and

20  invites abuse.   Any need for further motions should be justified at

21  the time they are filed, permitting both the Government to oppose on

22  a motion-by-motion basis and this court to determine if such motions

23  could in fact have been filed earlier.   Any other course would invite

24  an interminable and protracted motion practice, resulting in delay of

25  trial.

26  //

27  //

28  //

D.   THE GOVERNMENT'S MOTION FOR RECIPROCAL
     DISCOVERY SHOULD BE GRANTED

1.   Rule 16(b)

The  defendant  has  invoked  Federal  Rule  of  Criminal
Procedure 16(a) in his motion for discovery.  In addition, the
Government voluntarily will comply with the requirements of Federal
Rule of Criminal Procedure 16(a).  Thus, the 16(b) provision of that
rule are operable as to defendant.

The Government, pursuant to Rule 16(b), hereby requests the
defendant to permit the Government to inspect, copy, and photograph
any and all books, papers, documents, photographs, tangible objects,
or make copies of portions thereof, which are within the possession,
custody or control of defendant and which he intends to introduce as
evidence in his case in chief at trial.

The Government further requests that it be permitted to inspect
and copy or photograph any results or reports of physical or mental
examinations and of scientific tests or experiments made in connection
with this case, which are in the possession or control of the
defendant, which he intends to introduce as evidence in chief at the
trial or which were prepared by a witness whom the defendant intends
to call as a witness.  The Government also requests that the Court
make such orders as it deems necessary under Rule 16(d)(1) and (2) to
ensure that the Government receives the discovery to which it is
entitled.

2.   Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production
of prior statements of all witnesses except the defendant.  The Rule

1  thus provides for the reciprocal production of Jencks statements.  As

2  stated in pertinent part:

3         After a witness other than the defendant has testified on
        direct examination, the court, on motion of a party who did

4         not call the witness, shall order the attorney . . . to
        produce, for the examination and use of the moving party,

5         any statement of the witness that is in their possession .
        . . .

6

7  Fed. R. Crim. P. 26.2(a).

8         The time frame established by the Rule requires the statement to

9  be provided after the witness has testified, as in the Jencks Act.

10  Therefore, the Government hereby requests that defendant be ordered

11  to supply all prior statements of defense witnesses by a reasonable

12  date before trial to be set by the court.  This order should include

13  any form these statements are memorialized in including, but not

14  limited to, tape recordings, handwritten or typed notes and reports.

15                                III

16                             <u>CONCLUSION</u>

17         For the foregoing reasons, the Government respectfully requests

18  that defendant's motions be denied and the Government motions be

19  granted.

20         DATED:  January 16, 2008.

21
                                    Respectfully submitted,
22
                                    KAREN P. HEWITT
23                                  United States Attorney

24                                  s/Steve Miller

25                                  STEVE MILLER
                                    Assistant U.S. Attorney
26

27

28

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 07cr3355-LAB |
| ) | |
| Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| v. ) | |
| ) | |
| LORI STAUFFER (1), and ) | |
| MARK NEEL (2,) ) | |
| ) | |
| Defendant. ) | |
| _____) | |

IT IS HEREBY CERTIFIED THAT:

I, Steve Miller, am a Citizen of the United States over the age of eighteen years and a resident of San Diego county, California. My business address is 880 Front Street, San Diego, California 92101-8893. I am not a party to the above-entitled action. I have caused service of the Government's Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies them.

1.   Michael E. Burke; burkelaw1@sbcglobal.net
2.   Robert H. Rexrode; robert_rexrode@rexrodelawoffices.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-EFC participants on this case n/a the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  January 16, 2008.

s/Steve Miller
STEVE MILLER